UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JESSICA MEROLA,

                      *Plaintiff*,

  -against-

Upstate Physician Services, P.C.,
Meghani Mustafain Yaseen, M.D.,

                      *Defendants*.

**COMPLAINT**

Civil Action No.  1:17-CV-0979 (TJM/DJS)

Jury Trial Demanded

---

Plaintiff, Jessica Merola, by her attorneys, O'Connell & Aronowitz, P.C. as and for her complaint against Defendant, Upstate Physician Services and Mustafain Meghani, M.D., alleges as follows:

## INTRODUCTION

1. This is an action to recover damages pursuant to Federal False Act codified at 31 U.S.C. § 3730(h), New York State False Claims Act codified at New York State Finance Law § 191, and New York Labor Law § 740 for illegal retaliation by Defendants against Plaintiff.

## THE PARTIES

2. At all times hereinafter mentioned, Jessica Merola ("Merola" or "Plaintiff"), was and is an individual residing at 151 Sharpe Road, Wynantskill, New York 12198.

3. Upon information and belief, at all times hereinafter mentioned, Upstate Physician Services, P.C. is and was a domestic professional corporation registered in Richmond County, New York, with its primary office located at 2001 5th Avenue, #110, Troy, New York 12180. Upstate Physician Services provides medical services, including psychiatric evaluations and

treatment, and has various office locations in the Capital Region, including offices in Troy and Delmar, as well as in New Hartford, New York.

4. Meghani Mustafain Yaseen, M.D., commonly referred to as Dr. Mustafain Meghani, ("Meghani"), is a licensed physician in New York and currently registered with license number 266213. Upon information and belief, Meghani was and is the President and Medical Director of Upstate Physician Services.

## JURISDICTION AND VENUE

5. This action arises under the whistleblower provisions of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq*., and the New York State False Claims Act codified at NY State Finance Law §§ 189 *et seq*., and New York Labor Law § 740.

6. This court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1367(a).

7. This court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331 because Defendants transact business in this jurisdiction and violations of 31 U.S.C § 3730(h) described herein were carried out in this district.

8. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and under 31 U.S.C. § 3732(a).

## SUMMARY

9. From approximately July 2016 to November 2016, while employed by Defendants, Plaintiff became aware of several illegal practices occurring at the offices of Defendants. These illegal practices included (a) staff harassing patients for medication, including via social media; (b) staff stealing prescription pads and writing out prescriptions; (c) nurse practitioners prescribing

suboxone when the regulations require prescriptions to be written by physicians; and (d) office visits being billed for a physician visit when the patient was seen by a nurse practitioner.

10. Defendants have violated the controlled prescription regulations at 10 N.Y.C.R.R. Part 80 and applicable Medicaid regulations.

11. Upon learning of the illegal practices, Plaintiff informed the Office of Attorney General ("OAG") and Drug Enforcement Agency ("DEA").

12. In direct retaliation for being reported, Defendants have violated New York State Finance Law § 191 of the New York State False Claims Act by discharging Plaintiff because of lawful acts done by her in furtherance of reporting a false billing scheme that would constitute a violation of the New York False Claims Act.

13. Defendants have violated 31 U.S.C. § 3730(h) of the federal False Claims Act by discharging Plaintiff because of lawful acts done by her in furtherance of reporting a false billing scheme that would constitute a violation of the federal False Claims Act.

14. Defendants have also violated Section 740 of the New York Labor Law by discharging Plaintiff after she disclosed information regarding activities, policies and practices that are in violation of the law and constitute health care fraud; provided information to the OAG and DEA regarding such activities; and refused to participate in the activities occurring at Defendants' offices.

## LEGAL BACKGROUND

15. Any physician who wishes to prescribe, administer or dispense buprenorphine (also known commercially as suboxone) must be authorized by the Office of Alcoholism and Substance Abuse Services ("OASAS") under Part 829 of Title 14.

16. Upon information and belief, Dr. Meghani is registered to prescribe buprenorphine.

17.     During the relevant time period and prior to May 2017, only an authorized physician was permitted to prescribe, administer, or dispense buprenorphine. *See* 10 N.Y.C.R.R. § 80.84.

18.     An authorized physician is defined as a physician specifically registered with the Drug Enforcement Administration (DEA) to prescribe, administer, or dispense an approved controlled substance for the treatment of narcotic addiction. *See* 10 N.Y.C.R.R. § 80.84(b).

19.     Prior to May 2017 and during the relevant time period, nurse practitioners were not included in the definitions of individuals authorized or allowed to administer, prescribe or dispense buprenorphine.

20.     Physicians and physician practices must also follow regulations promulgated by the Department of Health ("DOH") regarding the administration, dispensing and prescribing of controlled substances. 10 N.Y.C.R.R. Part 80.

21.     Physicians must register with DOH to be issued official New York State prescription forms. 10 N.Y.C.R.R. § 80.72.

22.     10 N.Y.C.R.R. § 80.77(b), requires practitioners to immediately notify DOH of the loss, destruction, theft or unauthorized use of any official New York State prescription forms issued to them.

23.     The regulations further provide that the practitioner "shall immediately notify the Bureau of Narcotic Enforcement upon discovery that one or more prescriptions issued under that practitioner's DEA registration were prescriptions the practitioner had not signed." 10 N.Y.C.R.R. § 80.77(e).

24.     Title XVIII of the Social Security Act, 42 U.S.C. §§ 1396, *et seq*., establishes Medicaid, a federally assisted grant program for the States. Medicaid enables the States to provide

medical assistance to needy individuals, with parameters set by the State. The Medicaid program is funded by both federal and state funds, with federal contribution computed separately for each State.

25. The federal Medicaid statute sets forth minimum requirements for State Medicaid programs to qualify for federal funding.  42 U.S.C. §§ 1396 *et seq*.

26. New York administers its Medicaid program (also known as the Medical Assistance Program) through the New York State Department of Health.

27. In order to be eligible to receive Medicaid funds as a provider in New York State, a provider must enroll in the Medicaid program and be approved.  18 N.Y.C.R.R. §504.2.

28. Upon information and belief, Defendant Meghani is a registered Medicaid provider with NPI number 1053540351.

29. Enrolled providers of medical services to Medicaid recipients are eligible for payment for covered services to Medicaid recipients. As part of enrollment, Medicaid enrolled providers agree to abide by the rules, regulations, policies and procedures governing claims for payment. 18 N.Y.C.R.R. § 504.3.

30. Specifically, under 18 N.Y.C.R.R. § 504.3(i), enrolled providers are required to comply with the rules, regulations and official directives of the department.

## FACTUAL BACKGROUND

A. **Plaintiff's Employment at Upstate Physician Services**

31. Plaintiff was hired by Defendant Meghani at Upstate Physician Services as a full-time receptionist in July 2015 at "Behavioral Medicine" in Troy, New York.

{O0064308.1}                                                       5

32. After approximately one week of employment, Plaintiff was promoted to Practice Manager.

33. During her tenure at Upstate Physician Services, Plaintiff always received high praise from Defendants, specifically from Defendant Meghani.

### B. Instances of Misconduct

34. In or around July or August 2016, Plaintiff informed Defendant Meghani that suboxone was found in the desk of an Upstate Physician Services non-physician employee.

35. Upon information and belief, on July 29, 2016, a Practice Administrator at the South Troy office location and Plaintiff's assistant manager, received a call from a relative of a patient. The relative informed Plaintiff's assistant manager that a non-physician employee had contacted the patient and asked the patient to sell the non-physician employee some of the patient's medication via social media.

36. On or about the same day, Plaintiff's assistant manager informed Plaintiff of this phone call discussed in paragraph 35.

37. Upon information and belief, the non-physician employee had engaged in the activity discussed in paragraph 35 with other patients.

38. In addition to the efforts to obtain medication from patients, upon information and belief, the non-physician employee had also taken blank prescription pads and written out prescriptions to the non-physician employee.

39. After being confronted, the non-physician employee signed a statement stating that on or around March 26, 2016, she had stolen four prescription papers from prescription pads that another physician at Defendant Upstate Physician Practices had left behind.

40. Upon information and belief, the non-physician's employment was terminated on or around July 29, 2016.

41. Upon information and belief, the Department of Health was not contacted by Defendants about the stolen prescriptions in violation of the applicable regulations.

42. Upon information and belief, the Bureau of Narcotic Enforcement at DOH was not contacted by Defendants about the stolen prescriptions in violation of the applicable regulations.

**C. Prescribing Practices of Suboxone and False Claims**

43. Defendant Upstate Physician Services is an authorized treatment program that allows the providers to prescribe Suboxone (buprenorphine HCI/naloxone HCl dehydrate, sublingual tablet) to individuals suffering from opioid dependence.

44. Defendant Upstate Physician Services held monthly/weekly suboxone visits for patients. A patient's use of suboxone was supposed to be monitored at these visits and prescriptions were supposed to be filled as needed.

45. In or around September and/or October of 2016, Plaintiff discovered that it was a practice in the office for staff to make a notation, and subsequently submit claims for billing, that Defendant Meghani had met with a patient regarding suboxone use when really a nurse practitioner had met with the patient. The notation would usually state "was seen by Dr. Meghani," or something to that effect. On suboxone visit days, Defendant Meghani would frequently be out of the office.

46. When the suboxone visit was billed for payment, it was entered under a CPT code which falsely designated that the visit to administer, prescribe, or monitor a patient's suboxone use, was conducted by a physician.

**D. Protected Activity**

47. In November 2016, Plaintiff and with colleagues reported the practices of misconduct taking place at Defendant Upstate Physician Services and by Defendant Meghani to the DEA and the OAG. Plaintiff and colleagues reported that employees had stolen prescriptions and harassed patients for access to medications, that it was common practice for Defendant Meghani to instruct staff to make inaccurate notes on a patient's chart regarding prescribing of buprenorphine, and then subsequently submit a claim for payment on a service that was not performed by Defendant Meghani or another physician of the practice.

48. The following week, on November 16, 2016, Plaintiff Merola was verbally placed on probation. During the meeting, Plaintiff was falsely accused of accessing patient charts without permission.

49. In or around November 2016, another employee who had reported Defendants to the OAG and DEA with Plaintiff Merola gave a two-week notice of her resignation as Practice Manager at the Troy office location.

50. Upon information and belief, this employee received an email from another Practice Administrator asking if she would disclose names of employees who had reported any false claims. Upon information and belief, the sum and substance of the email stated that if she did, Upstate Physicians would work with her on her pay owed and any legal repercussions.

51. Upon information and belief, this employee reported that Plaintiff had reported Defendant Meghani to the DEA and the OAG.

52. Upon information and belief, Defendants were contacted by the Department of Justice/DEA regarding the information that was provided, in part, by Plaintiff.

### E. Plaintiff's Termination of Employment

53. In direct retaliation for her reporting, on December 6, 2016, Plaintiff had a meeting with Defendant Meghani and two other administrative personnel. During the meeting, Defendant Meghani asked Plaintiff about her visits to the DEA and the OAG. He stated that he cannot trust Plaintiff because she had disclosed information to those offices.

54. In direct retaliation for her reporting, Plaintiff's employment with Upstate Physician Services was terminated that day by Defendants.

55. Upon information and belief, following Plaintiff's termination, Defendant Meghani, and other members of management at Upstate Physician Services, were telling employees that Plaintiff was terminated because she was part of a group of people who went to the DEA and that Plaintiff was the "ring leader".

56. On or around February 17, 2017, one of the Practice Administrators at Defendant Upstate Physician Services submitted a complaint to the New York State Department of Labor (DOL) falsely stating that Plaintiff was given multiple verbal warnings, written up on multiple occasions, and showed little to no effort to improve her work. She was also accused of improperly accessing patient records without a valid reason in violation of Health Insurance Portability and Accountability Act ("HIPAA").

57. In or around March 2017, the DOL complaint was withdrawn by Defendant Upstate Physician Services.

## FIRST CLAIM FOR RELIEF
### Violation of Federal False Claims Act: 31 U.S.C. § 3730(h)

58. Plaintiff seeks relief against Defendants under 31 U.S.C. § 3730(h) of the federal False Claims Act.

59. 31 U.S.C. § 3730(h) provides that any employee shall be entitled to all relief necessary to make the employee whole if the employee is discharged, harassed or in any other manner discriminated against in terms and conditions of employment because of lawful acts done by the employee to stop one or more violations of the False Claims Act.

60. Defendants engaged in unlawful acts including alleged submission of false claims for suboxone visits that were billed as if Defendant Meghani had seen the patient and prescribed buprenorphine but was not in the office at the time of the visit.

61. As a direct result of these reports of alleged false claims, Plaintiff's employment was terminated by Defendants.

62. As a result of Defendants' termination of Plaintiff, she was discriminated against in the terms and conditions of her employment because of lawful acts done by her in furtherance of an action involving false claims.

63. By reason of this discrimination, Plaintiff is entitled to statutory damages, including two times the amount of back pay; interest on the back pay; and compensation for special damages sustained as a result of the discrimination, including compensatory, damages and punitive damages, together with litigation costs and reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**Violation of New York State False Claims Act § 191**

64. Plaintiff seeks relief against Defendants under New York State Finance Law § 191 of the New York State False Claims Act.

65. New York State Finance Law § 191 of the New York State False Claims Act permits any former employee who is discharged from employment to seek remedy when the employee is discharged because of lawful acts done by the employee in furtherance of efforts to

stop one or more violations of the New York False Claims Act, codified at New York State Finance Law §§ 189 *et seq*.

66. Defendants engaged in unlawful acts including submission of false claims for suboxone visits that were billed as if Defendant Meghani had seen the patient and prescribed buprenorphine but was not in the office at the time of the visit.

67. At all times relevant hereto, Defendants acted knowingly and may have violated the False Claims Act by submitting false or fraudulent claims for suboxone.

68. As a direct result of these reports of allegedly false claims and subversion of drugs, Plaintiff's employment was terminated by Defendants.

69. As a result of Defendants' termination of Plaintiff, she was discriminated against in the terms and conditions of her employment because of lawful acts done by her in furtherance of an action involving false claims.

70. By reason of this discrimination, Plaintiff is entitled to statutory damages, including two times the amount of back pay; interest on the back pay; and compensation for special damages sustained as a result of the discrimination, including compensatory, damages and punitive damages, together with litigation costs and reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF
### Violation of New York Labor Law § 740(2)(a)

71. Plaintiff seeks relief against Defendants under Section 740 of the New York Labor Law.

72. Labor Law § 740 prohibits an employer from taking any retaliatory personnel action against an employee who does any of the following: (1) discloses or threatens to disclose to a public body the activity, policy or practice of the employer that is in violation of the law or regulation and constitutes health care fraud or presents a substantial and specific danger to the

public health or safety; (2) provides information to a public body conducting an investigation or inquiry into any such violation of a law or regulation by the employer; or (3) objects to, or refuses to participate in any such activity, policy of practice in violation of a law, rule or regulation.

73. Plaintiff reported to her employer that drugs were being subverted and that she refused to allow the practice to continue.

74. When the practice continued, Plaintiff reported to the DEA and the OAG practices that constitute health care fraud, including false billing and subversion of drugs.

75. In direct retaliation to Plaintiff's lawful disclosures, Defendants terminated Plaintiff's employment with Defendants because she disclosed to and provided information to a public body regarding activities and practices of Defendants that are in violation of the law and regulations, which create and present a substantial and specific danger to the public health or safety, and constitute health care fraud.

76. By reason of this discrimination, Plaintiff is entitled to compensation for lost wages, benefits and other remuneration, compensation for special damages sustained as a result of the discrimination, including compensatory damages and punitive damages, together with litigation costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, prays for relief and judgment as follows:

A. On the first and second claims for relief, payment of two times back pay plus interest;

B. On the third claim for relief, compensation for lost wages, benefits, and other remuneration;

C.  On all claims for relief, compensation for special damages sustained as a result of the discrimination, including compensatory damages and punitive damages, together with litigation costs and reasonable attorneys' fees; and

D.  Such other and further relief as the Court may deem just and proper.

Dated: Albany, New York
      September 1, 2017           O'CONNELL AND ARONOWITZ, P.C.

By:   S/ _____
     Danielle Holley, Esq.
     *Bar Roll # 516795*
     *Attorney for Plaintiff*
     O'Connell & Aronowitz, P.C.
     54 State Street, 9th Floor
     Albany, New York 12207
     Tel: (518) 462-5601
     Fax: (518) 462-2670
     dholley@oalaw.com